## In re Petitions of Burlington Electric Light Department

[373 A.2d 514]

Nos. 72-75, 118-75

Present: **Barney, C.J., Daley, Billings, and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned**

Opinion Filed February 1, 1977

*Joseph E. McNeil,* Burlington, *Michael W. Wool,* Burlington, for Plaintiff.

*Chester S. Ketcham,* Middlebury, for public, *Louise McCarren,* Vermont Legal Aid, Burlington, for VWRO, Defendants.

**Billings, J.** This is a consolidated appeal by the public from a Public Service Board order granting an electric utility rate increase upon two petitions of the municipally owned Burlington Electric Light Department (hereinafter Department).

On September 18, 1973, the Department requested a 17% rate increase, (Docket No. 3752). On November 30, 1973, the Board entered an interim one-year order based upon a stipulation of the parties for a purchased power and fuel adjustment clause. By virtue of this Court's decision in *In re Petition of Allied Power and Light Co.,* 132 Vt. 354, 321 A.2d 7 (1974), the increased rates were frozen as of March, 1974, at an approximately 21% increase over the rates charged prior to September 18, 1973. On September 17, 1974, the Department petitioned for a permanent additional increase of 19.1% above the interim order, (Docket No. 3909). On November 25, 1974, the Board issued two orders; the first permitted a temporary rate increase in the amount stipulated to in the order of November 30, 1973, and the second denied a temporary rate increase in the amount petitioned for in Docket No. 3909. On February 19, 1975, the Public Service Board issued findings and a consolidated order for both petitions and subsequently, after updating the cost of service data, the Board issued its final order on April 11, 1975, allowing the Department to charge permanent rates in an amount equal to 20.82% above the rates allowed under the interim order. The Board, pursuant to V.R.A.P. 13(d), has certified fourteen questions for review, but we are limited to those briefed by the appellant public's counsel. *In re Smith, Bell & Hauck Real Estate, Inc.* 132 Vt. 295, 300, 318 A.2d 183 (1974).

Counsel for the public claims the Board erred when it allowed $452,793 as a contribution in lieu of taxes. The principal

argument made by the public is that contributions in lieu of taxes are appropriate only when the municipal utility serves customers outside the municipal boundaries, citing *Hastings* v. *Village of Stowe Electric Dept.*, 125 Vt. 227, 231, 214 A.2d 56 (1965). It asserts that the ratepayers and the taxpayers are the same in the case at bar. Further, it argues that in the Burlington situation a contribution in lieu of taxes is a guise to redistribute tax burdens because the University of Vermont, various governmental agencies, and private organizations which are tax exempt pay the contribution through utility charges when the municipality would otherwise have to seek those revenues through property taxes from others. The public also objects to the use of net utility plant in calculating the contribution, claiming it is not equivalent to fair market value and that the use of a figure other than fair market value shifts the burden of proof to the intervenors.

Unlike the situation in *Re Village of Stowe Electric Dept.*, 134 Vt. 559, 367 A.2d 1056 (1976), and *Hastings* v. *Village of Stowe Electric Dept.*, *supra*, the ratepayers and the taxpayers in the case at bar are susbstantially the same, given that the boundaries of the municipality and the utility's service territory are the same. There are, however, approximately 9,000 taxpayers as compared with 14,000 ratepayers. The costs paid as a ratepayer are not related to the costs borne as a taxpayer, *i.e.*, either status does not affect the computation of respective costs. Utility charges should relate to the costs of providing the service and should be paid by those receiving the service.

30 V.S.A. § 2923(a) allows municipals a rate of return commensurate with that granted private utilities. Property taxes are a recognized operating expense for private utilities, and a contribution in lieu of taxes is analogous to an operating expense. Further, as an incentive to continued municipal ownership of utilities, contributions in lieu of taxes make up for lost taxes otherwise available when the proprietary function is privately owned. These contributions appropriately allocate costs to the users of the service based upon equitable rate design rather than upon taxpaying status which is unrelated to utility service. While the Department provides a "municipal service", we believe the overriding consideration is appropriate cost allocation as outlined above.

*Hastings* v. *Village of Stowe Electric Dept.*, 125 Vt. 227, 214 A.2d 56 (1965) recognized that where a municipality suffers a

loss in tax revenues by reason of the tax exempt status of a municipal utility, 32 V.S.A. § 3802(4), the municipal utility may properly claim a tax equivalent as an operating expense provided that the amount of contribution or equivalent does not exceed what a private utility would pay in taxes on the same utility plant. The record here amply demonstrates that the amount allowed was computed on the net book value, a procedure previously recognized by this Court, *Re Village of Stowe Electric Dept., supra,* and which in this case was less than fair market value. The calculation of the contribution in lieu of taxes was not erroneous and was within the competence and judgment of the Board. *Re Village of Stowe Electric Dept., supra; Latourneau* v. *Citizens Utilities Co.,* 125 Vt. 38, 47, 209 A.2d 307 (1965).

■ The Board's allowance of a rate of return of 5.94% was without error. 30 V.S.A. § 2923(a) allows a municipally owned electric system a reasonable rate of return on capital investments. *Re Village of Stowe Electric Dept., supra.* The rate must be "commensurate" with that permitted private utilities. It is clear that the Legislature, in enacting the statute in response to the holding in *Hastings* v. *Village of Stowe Electric Dept., supra,* intended that some rate of return be granted by using other municipal utilities as a basis for ascertaining the rate to which another Vermont municipal electric utility should be entitled. In arriving at the rate allowed, the Board exercised its discriminating judgment when it found adequate and reasonable the rate urged by the public. *Latourneau* v. *Citizens Utilities Co., supra.*

The appellants next claim the Board erred when it allowed the rate case expenses to be recovered in one year. On oral argument, counsel for the appellants, in view of our recent decision in *Re Village of Stowe Electric Dept., supra,* conceded that this was not error and within the expertise, technical competence, and specialized knowledge of the Board.

The counsel for the public claims that the Board erred in the matter of recoupment. As we understand its position, the public argues that the Board's order of February 19, 1975, characterizing the petition in Docket No. 3909 as an amendment to the petition in Docket No. 3752 effectively consolidates the petitions as one rate case. Thus, when the Board gave temporary rate relief on November 25, 1974, in an amount equal to that stipulated to in the order of November 30, 1973, it was prohibited

from granting any recoupment in its final order on the matter. 30 V.S.A. § 226; *In re New England Tel. & Tel. Co.*, 131 Vt. 310, 305 A.2d 598 (1973). Further, it contends that no hearings were held on the question of recoupment and that there was no evidence nor findings made of economic changes upon which to base recoupment.

30 V.S.A. § 226(b) authorizes the Board to allow recoupment on the "changed rate". In cases where the Board orders temporary rate changes, no recoupment can be allowed. *In re New England Tel. & Tel. Co.*, *supra.* The Board's order of November 30, 1973, characterizes the stipulation for a purchased power and fuel adjustment clause as a change in rates and as a request for temporary approval of a rate adjustment. The Board's first order of November 25, 1974, extending the then stipulated rate was in effect a grant of temporary relief in Docket No. 3752.

We believe it is inequitable to become mired in a semantic trap about the characterization of the several petitions and proceedings. Recoupment on Docket No. 3909 would clearly have been legally permissible after the denial in the Board's second order of November 25, 1974, for a temporary increase in an amount petitioned for in Docket No. 3909. The Board correctly limited recoupment to the period of October 18, 1974, to May 1, 1975, and omitted any recoupment on the interim rates which were in effect as a result of the stipulation and interim order.

As for the contentions that hearings were necessary to ascertain the amount of recoupment authorized and that the evidence and findings were lacking, the record amply supports the Board's finding that economic changes had occurred since the September, 1974, filing, especially that there were "very steep increases in the price of coal and gas". The Board properly allowed recoupment without hearing on the basis of 16.25% revenue deficiency, and no error appears. *Re Village of Stowe Electric Dept.*, *supra.*

■ Lastly, appellant claims the Board erred when it based its April 11, 1975, order upon data submitted in supplemental hearings after the hearing on the merits, particularly when that data resulted in rates above those requested in the petition. The Board's order of February 19, 1975, provided that the Department and the public update all data to the end of the test year - 1974, adjusted for known and measurable changes. This procedure was recognized in *Letourneau* v. *Citizens Utilities Co.*,

128 Vt. 129, 259 A.2d 21 (1969). The rationale is that new rates should reflect the utility's most recent actual experience with any adjustments which will make the test period reflect typical conditions in the immediate future. *Id.*, 128 Vt. at 133. The order provided an opportunity for other parties to respond at a hearing. Although given adequate notice, the appellants declined to participate in the updating procedure. Based on the data submitted, the Board issued its final order on April 11, 1975.

The intervenors are not obligated to prepare testimony in concert with a petitioning utility. While we understand the Board's and parties' dilemmas caused by regulatory lag, we are compelled to comment that the eleventh hour presentation of prepared testimony and exhibits to adversary parties is unacceptable. However, the appropriate response is to request a continuance before the updated figures are considered by the Board. The appellants did not request a continuance. They have failed to show prejudice or that the procedures were outside the Board's scope of authority or are otherwise erroneous. *Re Village of Stowe Electric Dept., supra.*

*The order of the Public Service Board dated April 11, 1975, is affirmed. Let the result be certified.*