**Arlington Selectmen, et al. v. Arlington Water Company**

[394 A.2d 1130]

No. 179-78

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed October 30, 1978

*Arthur J. O'Dea,* Manchester Center, for Plaintiffs.

*Robert S. Pratt* of *Carroll, George, Hill & Anderson,* Rutland, for Defendant.

**Larrow, J.** In September, 1977, the selectmen of the Town of Arlington and five other customers brought a complaint before the Public Service Board, under 30 V.S.A. § 208, against Arlington Water Company, a privately owned utility operating a water supply system in Arlington. The complaint alleged, in substance, that the water service was unsafe and inadequate and that the rates were, for that reason, excessive, unreasonable and improper. No specific relief was requested in the complaint. However, the complainants' request for findings of fact, filed after the hearing, sought an order suspending payment of all water rents. That suspension would have been effective until the Company complied with all existing Health Department directives and until the Board approved a plan for the development and funding of an adequate system.

The hearing examiner found a long history of dereliction by the Company, and existing conditions of impurity, inadequate volume and supply, and nonfunctioning hydrants, clearly indicating miserably poor service. He recommended the rate

suspension asked by the complainants, as well as the other relief.

The Board, however, did not adopt the findings of the examiner. It substituted its own findings, which are not seriously challenged here. It found that, as of the date of hearing before the examiner, the Company was not furnishing the "reasonably adequate service, accommodation and facilities to the public" required by 30 V.S.A. § 219. It ordered the filing of reports of compliance with Department of Health orders, an engineering report evaluating the system, and reports of capital improvements. It reserved the right to institute a future investigation into the reasonableness of rates. It did not order suspension of rate payments, and concluded, on the record before it, that there was insufficient evidence to determine the reasonableness of existing rates.

■■ Three questions have been certified to us by the Board. The first two relate to the authority of the Board to issue its order, and to whether its actions are supported by the record. We see no materiality to these questions, because the Company has not appealed from the order in question, and the complainants attack it only as inadequate. Complainants argue, in the language of the third question certified, that the Public Service Board committed error in refusing to suspend the water rents in question. In substance, they say that the Board not only had this power, but abused its discretion in refusing to exercise it. We disagree, and affirm.

The issue thus presented is clearly defined. We are not confronted with a total failure of service, which might well justify nonpayment even without Board action. The failure or inadequacy involved here is partial. Though the water supply may not be potable without boiling, inadequate in volume and pressure, and with nonfunctioning hydrants, it cannot be said to be, for those reasons, totally valueless. Were it so, disconnection would be the obvious remedy. We can judicially notice its potability after boiling, its use for sanitary purposes, for cleaning, for irrigation, and for limited private fire protection. Bad as conditions are, and however callous the attitude of the Company, the water supply cannot be termed totally without value.

This is not to say that the Board is powerless in the face of inadequate service. The concept of reasonable service is frequently tied to the reasonable rate requirement in our statutes. 30 V.S.A. §§ 209, 218, 219. And we have accepted that general proposition, indicating that poor service can justify lower rates. *Petition of New England Telephone & Telegraph Co.*, 115 Vt. 494, 513, 66 A.2d 135, 147 (1949).

But the total suspension of rates for deficiencies in service presents other considerations. As we have pointed out, the service here being rendered is not, in its worst aspects, totally without value. 30 V.S.A. § 218 guarantees a reasonable, non-confiscatory rate of return for public utilities. *City of Newport v. Citizens Utilities Co.*, 116 Vt. 103, 107, 70 A.2d 590, 593 (1950). And, apart from noncompliance with the statute, a total suspension of rates, without relation to their reasonableness in amount, would raise questions of confiscation for public use without just compensation. See *F.P.C. v. Hope Natural Gas Co.*, 320 U.S. 591, 601, 607 (1944); *F.P.C. v. Natural Gas Pipeline Co.*, 315 U.S. 575, 585 (1942). We do not reach that question, because we are convinced that, upon the record before it, the Board correctly concluded that it had no adequate basis for affirmative action beyond those which it took. The familiar criteria for alteration of filed rates had not been met.

■ The reasonableness of a rate base must be determined upon four factors: 1) gross earnings, 2) operating expenses, 3) rate base, the net value of the property upon which a return should be earned, 4) rate of return. *Petition of Green Mountain Power Corp.*, 131 Vt. 284, 294, 305 A.2d 571, 577 (1973), citing *Latourneau v. Citizens Utilities Co.*, 125 Vt. 38, 48, 209 A.2d 307, 315 (1965); *Petition of New England Telephone & Telegraph Co.*, 120 Vt. 181, 190–91, 136 A.2d 357, 364 (1957). An analysis of the various subordinate factors which determine the eventual composition of each of these factors could occupy many pages, but such an analysis is not required here, because the case presented below dealt with none of them. There was no evidence before the Board on which it could intelligently base a rate reduction, much less a total suspension. Cognizant of the gravity of the situation, it took the steps it deemed essential to future rigid supervision

and preparation for an eventual rate hearing should that be deemed advisable. While other steps might have been desirable to achieve the same general objectives, no one here argues any abuse of discretion for failure to take them, aside from appellants' argument that rates should have been suspended *in toto.* As we have pointed out, even assuming the constitutionality of such a step, it would not have been in compliance with our requirements for rate review. Since it was unauthorized on the record before the Board, no abuse of discretion is made to appear. It was not even within the range of discretion, as the Board correctly held.

*For the reasons stated in the opinion, the first two questions certified are not answered. The third certified question, as to whether the Board erred in refusing to suspend the water rents in question, is answered in the negative, and the cause is remanded.*